# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

MARCO A. LOPEZ,

     Plaintiff,

                                Case No. 1:12-cv-21649-FAM

v.

WORLD FINANCIAL NETWORK
NATIONAL BANK; and PORTFOLIO
RECOVERY ASSOCIATES, LLC,

     Defendants.

_____/

## DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S MEMORANDUM IN OPPOSITION OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

     Defendant, Portfolio Recovery Associates, LLC ("Portfolio"), by and through its undersigned counsel and pursuant to Southern District of Florida Local Rule 7.1(c), hereby submits this its Memorandum in Opposition of Plaintiff's Motion for Partial Summary Judgment, and states as follows:

     In accordance with Southern District of Florida Local Rule 56.1, Plaintiff has filed a Statement of Material Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment ("DSOMF"), which will be referenced throughout this Memorandum. In light of these facts and the application of the law to these facts, Plaintiff cannot be entitled to summary judgment against Portfolio, for several reasons.

**I.  PLAINTIFF'S MOTION IS VOID OF ANY AUTHORITATIVE SUPPORT FOR ITS LEGAL ASSERTIONS, AND ERRONEOUSLY RELIES SOLELY UPON *BODUR V. PALISADES COLLECTION, LLC*.**

Plaintiff's Motion for Partial Summary Judgment (Plaintiff's "MSJ") inexplicitly fails to provide authoritative support for almost every legal conclusion it sets forth.[1] In support of his assertion that Portfolio violated the FDCPA and FCCPA, Plaintiff apparently relies solely upon a Southern District of New York case, <u>Bodur v. Palisades Collection, LLC</u>, 829 F.Supp. 2d 246 (S.D.N.Y. 2011). <u>Bodur</u>, however, is not on point with respect to Plaintiff's allegations against Portfolio, as <u>Bodur</u> is factually distinguishable from this case on several fronts. Of particular importance, the defendant in <u>Bodur</u> was the *original* creditor and did not receive an assignment of the collection account. <u>Bodur</u> therefore does not address the effect of World Financial Network National Bank's ("World Financial") failure to inform Portfolio that the Victoria's Secret account at issue (the "Account") was in dispute. (*See* DSOMF ¶ 17.) Nor does Bodur discuss Plaintiff's subsequent failure to respond to Portfolio's lawful dispute verification letter. (*See* DSOMF ¶¶ 20, 22, 27.) As will be discussed, these facts alleviate Portfolio's liability by conclusively demonstrating that Portfolio lacked knowledge that the Account was in dispute.

Moreover, <u>Bodur</u> does not lend support to any of Plaintiff's theories of liability. Plaintiff's MSJ asserts: (1) that Portfolio had a duty to investigate the information provided to it by World Financial; (2) that Portfolio therefore should have known that the Account was in dispute; (3) as a consequence, Portfolio violated the FDCPA and FCCPA; and (4) Portfolio is not entitled to rely on a bona fide error defense because it failed to perform such an investigation. <u>Bodur</u>, however, does not impose a duty to investigate on Portfolio. Nor does <u>Bodur</u> even discuss a bona fide error defense. At most, <u>Bodur</u> stands for the for the proposition that it is possible for a debt collector to violate the FDCPA by contacting a consumer about a debt that it knows does not belong to that consumer. 829 F.Supp. 2d at 253, 254-55. This proposition of law is not in

---

[1] Plaintiff's Material Statement of Facts also fails in most instances to contain record citations as required by Local

dispute, but would not subject Portfolio to liability in this instance. Rather, at issue in this case is the effect of World Financial's and subsequently Plaintiff's failure to inform Portfolio that the Account was in dispute, an issue which neither Bodur, nor Plaintiff's Motion for Summary Judgment, addresses.

## II. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS FDCPA OR FCCPA CLAIMS AS A MATTER OF LAW.

Plaintiff is not entitled to summary judgment on any of his FDCPA or FCCPA claims against Portfolio as a matter of law, for three reasons. First, Plaintiff cannot establish that the Account was a "consumer debt" as is required in order to proceed with claims under both the FDCPA and FCCPA. Second, Plaintiff cannot sustain a claim under either §1692e or §1692f of the FDCPA because he knew that Portfolio was attempting to collect a debt that he does not owe. Lastly, Portfolio could not have violated §559.72, Florida Statutes, because it is undisputed that Portfolio did not have actual knowledge that the Account did not belong to Plaintiff or was in dispute. As a result, Plaintiff cannot be entitled to summary judgment on the issue of liability.

## A. PLAINTIFF CANNOT SHOW THAT THE ACCOUNT WAS A "CONSUMER DEBT" UNDER THE FDCPA OR FCCPA.

Plaintiff testified that he has "no idea" what was purchased on the Account. (DSOMF ¶ 30.) As such, Plaintiff cannot be entitled to summary judgment on any of his claims arising under either the FDCPA or FCCPA because he cannot prove that the Account was a "consumer debt," an essential element required for all claims arising under the FDCPA and FCCPA.

Indeed, in order to prevail on an FDCPA claim, Plaintiff must prove that: (1) he has been the object of collection activity *arising from consumer debt*, (2) Portfolio is a debt collector, and (3) Portfolio engaged in an act or omission prohibited by the FDCPA. Fuller v. Becker &

---

Rule 56.1.  (DSOMF ¶ 28.)

Poliakoff, P.A., 192 F. Supp. 2d 1361, 1366 (M.D. Fla. 2002). Thus, the FDCPA by its express terms only applies to only consumer debts. Id.; *see also* Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3rd Cir. 1987).

The same is true for claims under the FCCPA. *See* McCorriston v. L.W.T., Inc., 536 F.Supp.2d 1268, 1273 (M.D.Fla.2008); Morgan v. Wilkins, 74 So.3d 179 (Fla. 1st DCA 201)(discussing FCCPA as only applying to the collection on consumer debts); *see also* FLA. STAT § 559.77(5) (stating "[i]n applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal [FDCPA]").  As a result, the FCCPA has been referred to as the state counterpart of the FDCPA and requires similar proof.

A "consumer debt" is defined as an obligation of a consumer to pay money arising out of a transaction in which the subject of the transaction is primarily for "personal, family or household purposes." 15 U.S.C. § 1692a(5); FLA. STAT. §559.55. *It is Plaintiff's burden to establish that the items purchased on the Account were for such purposes.* Garcia v. LVNV Funding, LLC, 2009 WL 3079962, *3 - *5 (W.D. Tex). Plaintiff is not entitled to circumvent his burden by claiming that the Account was not his. Id.

In this case Plaintiff cannot meet his burden of proving the Account was a "consumer debt." He lacks personal knowledge and there is no other record evidence establishing this crucial element. (DSOMF ¶ 30.) It appears that Plaintiff is seeking some type of a presumption that the items potentially purchased on the Account are always used for personal, family, or household purposes as his citation to these facts directs the parties to Plaintiff's unverified Complaint. Such a presumption is not supported by law, nor is it justified in this instance as

Plaintiff acknowledged that items purchased at Victoria's Secret could be used for commercial purposes – bringing them outside the purview of the FDCPA and FCCPA. (*See* DSOMF ¶ 2.)

As a consequence, Plaintiff is not entitled to summary judgment on the issue of liability against Portfolio because he cannot prove an essential element to all of his claims, i.e., that the Account was a "consumer debt."

## B. PLAINTIFF CANNOT SUSTAIN HIS FDCPA CLAIMS BECAUSE HE HAD KNOWLEDGE THAT THE ACCOUNT WAS NOT HIS OWN.

It is well settled that a plaintiff cannot sustain an FDCPA claim under either §1692e or §1692f as a matter of law when he knows that the debt collection agency is attempting to collect a debt that he does not owe.[2] McDermott v. Randall S. Miller & Associates, P.C., 835 F.Supp. 2d 362, 371-72 (E.D. Mich. 2011); Kane v. National Action Financial Services, Inc., no.11-cv-11505, 2011 WL 6018403, at *1, 4 (E.D. Mich. Nov. 7, 2011). Even Bodur, the sole case cited by Plaintiff in substantive support of his MSJ, recognizes this principle. 829 F.Supp.2d at 252-53 (recognizing that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care").

As such, Plaintiff is not entitled to summary judgment on his FDCPA claims because he had knowledge that the Account was not his own. Plaintiff has vehemently maintained from the outset of this litigation that he knows the Account does not belong to him. (DSOMF ¶ 29.) Plaintiff alleges that he has expressly told both World Financial and Portfolio that the Account is

---

[2] The only FDCPA violations alleged in Plaintiff's Complaint fall under §1692e and §1692f. Plaintiff is not entitled to make new arguments on summary judgment. *See* Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1314-15 (11th Cir. 2004). "Liberal pleadings does not require that, at the summary judgment stage, defendants must infer all possible claims that could arise out of facts set forth in a complaint." Id. at 1315. Plaintiff is therefore limited to only §1692e and §1692f arguments on summary judgment, as Portfolio has not been put on notice of a need to defendant against any other provision. *See* id.; *see also* Green Country Food Mkt., Inc. v. Bottling Group, LLC, 371 F.3d 1275, 1279 (10th Cir. 2004).

not his. (DSOMF ¶ 31, 42); (*but see* DSOMF ¶ 41.) Plaintiff has also executed and delivered to World Financial an Affidavit of Fraud and Forgery which proclaims he "never" applied for the Account. (*see* DSOMF ¶ 13.) Such actions are fatal to Plaintiff's FDCPA claims because they sufficiently demonstrate Plaintiff's knowledge that the Account was not his own. *See* <u>McDermott</u>, 835 F.Supp. 2d at 366 (plaintiff had knowledge that the debt was not his own when he sent the debt collector a letter advising it that he was not the debtor under the loan in question).

Based on these facts, it is clear that there was never a time in which Plaintiff believed he owed money on the Account being collected by Portfolio. In fact, Plaintiff testified that during his one and only conversation Portfolio, he advised Portfolio that the Account was not his and hung-up on the representative before anything further could be said. (DSOMF ¶ 45.) Consequently, Plaintiff cannot be entitled to summary judgment on the issue of liability with respect to his FDCPA claims because he is not even entitled to sustain these claims as a matter of law.

## C. PORTFOLIO DID NOT VIOLATE THE FCCPA AS A MATTER OF LAW BECAUSE IT DID NOT HAVE ACTUAL KNOWLEDGE THAT THE ACCOUNT DID NOT BELONG TO PLAINTIFF.

Plaintiff cannot be entitled to summary judgment on his FCCPA claims against Portfolio. First, Plaintiff fails to explain how Portfolio violated the FCCPA in his MSJ. (Plaintiff's MSJ at 9-10.) Indeed, the FCCPA section in Plaintiff's MSJ speaks only to World Financial's potential liability, and makes no reference to Portfolio's liability whatsoever. (<u>Id</u>.) Plaintiff is thus not entitled to summary judgment on any FCCPA claims it may have against Portfolio because he did not move for summary judgment against Portfolio on those claims. (*See* <u>id</u>.)

Even if Plaintiff had moved for judgment against Portfolio, he would still not be entitled to summary judgment on his FCCPA claims because Portfolio could not have violated §559.72, Florida Statutes, as a matter of law. Plaintiff alleges that Portfolio violated the FCCPA by contacting him regarding a debt that was not his.[3] (*See* Compl. ¶¶ 13, 17.) It is well settled, however, that in order to sustain such a claim, Plaintiff must establish that Portfolio had ***actual knowledge*** that the account did not belong to him. Bacelli v. MFP, Inc., 729 F.Supp. 2d 1328, 1333 (M.D. Fla. 2010); *see also* Kaplan v. Assetcare, Inc., 88 F.Supp. 2d 1355, 1363 (S.D. Fla. 2000).

However, the record establishes that Portfolio did not have any knowledge that the Account was not Plaintiff's or was in dispute prior to the initiation of this action. It is undisputed that World Financial never informed Portfolio that the Account had been disputed by Plaintiff, nor was Portfolio provided a copy of Plaintiff's Fraud Affidavit. (DSOMF ¶ 17.) It is also undisputed that Plaintiff never responded to Portfolio's dispute verification letter or otherwise put Portfolio on written notice of his dispute. (DSOMF ¶ 27.)

Plaintiff's only other evidence supporting the idea that Portfolio had any knowledge of his disputing of the Account is Plaintiff's testimony that he told Portfolio that the Account was not his during a single telephone conversation. (DSOMF ¶ 42.) Portfolio has absolutely no record of ever speaking with Plaintiff (DSOMF ¶ 41.) Even if Plaintiff did speak with Portfolio, however, this alleged conversation would not be enough to prove that Portfolio engaged in collection activities with actual knowledge that the Account was not Plaintiff's. Plaintiff stated in his deposition testimony that, after allegedly telling a Portfolio representative that the Account

---

[3] Plaintiff is apparently referring to §559.72(9). However, it is unclear, as Plaintiff's Complaint and MSJ do not specify any specific provisions of the FCCPA whatsoever. This vastly limits Plaintiff's flexibility in his arguments concerning liability under the FCCPA. *See supra*, note 2.

did not belong to him, he promptly "hung-up" the phone, and "didn't give them time to say anything" in response. (DSOMF ¶ 45.) Plaintiff further testified that he did not answer any calls received from Portfolio after this alleged conversation. (DSOMF ¶ 43.) These actions cannot establish an intentional violation (i.e., a violation made with actual knowledge that the Account was not Plaintiff's) because Portfolio was entitled to perform reasonable follow-up activities to ensure it understood Plaintiff, make sure he was not lying, or seek compliance with its dispute procedures. *See* Clark v. Capital Credit & Collection Services, Inc., 460 F.3d 1162, 1170 (finding nothing abusive, harassing, deceptive or unfair about a follow-up call).

Plaintiff therefore not entitled to summary judgment on any of his FDCPA or FCCPA claims, as he cannot prove-up any of his allegations as a matter of law.

## III. PORTFOLIO DID NOT HAVE A DUTY TO MAKE AN INDEPENDENT INVESTIGATION; "SHOULD HAVE KNOWN" IS THEREFORE NOT A SUFFICIENT THEORY OF LIABILITY.

Contrary to Plaintiff's unsupported assertions, Portfolio did not have a duty to conduct an independent investigation of the Account (*see generally* Plaintiff's MSJ), and to the extent that it did, Portfolio fulfilled its obligations when it sent Plaintiff a dispute verification letter in compliance with 15 U.S.C. §1692(g) prior to beginning collection efforts. (DSOMF ¶ 20.)

It is well settled that ***Portfolio was entitled to rely on the information provided to it by World Financial, and it is not required to conduct an independent investigation of the Account***. In re Cooper, 253 B.R. 286, 292 (N.D. Fla. 2000); Bacelli, 729 F.Supp. 2d at 1334. World Financial never advised Portfolio that the Account was disputed. (*See* DSOMF ¶¶17, 27.) Portfolio's reliance on World Financial's silence was reasonable given the fact that creditors have a general affirmative duty to disclose all material facts regarding their accounts to third party collectors and assignees. *See* Kelliher v. Target Nat. Bank, 826 F.Supp. 2d 1324, 1330

(M.D. Fla. 2011). This includes informing collectors or assignees that accounts are disputed. *See* id. [4]

The only "investigation" Portfolio was required to conduct under the FDCPA is set forth in §1692(g). Portfolio fully complied with this provision by sending Plaintiff a dispute verification letter on January 1, 2012, prior to beginning collection activities on the Account. (DSOMF ¶ 20.)[5] Moreover, Plaintiff's reaction (or lack thereof) to this verification letter further shows why Portfolio would not have known the Account was in dispute because Plaintiff never responded to Portfolio's verification letter. (DSOMF ¶ 27.)  Clearly the law must place some burden on a party that is disputing a debt to advise the debt collector that the account is in dispute before liability can attach, especially in light of the FDCPA's requirement that debt collectors send out notices under §1692(g) giving procedures for disputing debts.

Based on the foregoing, Portfolio cannot be held liable under either the FCCPA or FDCPA on the basis that it "should have known" the Account was in dispute. The FCCPA expressly requires "actual knowledge." Bacelli, 729 F.Supp. 2d at 1333. The FDCPA requires at least a reasonable inference that Portfolio actually knew that the Account was not authorized in order to find liability. Jenkins v. Heintz, 124 F.3d 824, 828-32 (7th Cir. 1997); Jenkins v. Union Corp., 999 F.Supp. 1120, 1140-41 (N.D. Ill. 1998).  Here Plaintiff has not presented any evidence of such knowledge, and thus Summary Judgment should be denied.

## IV. PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON PORTFOLIO'S BONA FIDE ERROR DEFENSE, RATHER PORTFOLIO IS.

---

[4] Note that it is precisely because creditor's have an affirmative duty to disclose material facts that the law does not impose a duty upon assignees to conduct their own independent investigation. Requiring both would impose unnecessary transaction costs. Further, it makes sense to impose the investigative duties upon the original creditor, as it is in the best position to know material information regarding the account and can therefore protect consumers at the lowest cost.
[5] Note the sending of this verification letter cannot be a violation of the FDCPA, as debt collectors are required to send such a letter prior to beginning collection activities. *See* 15 U.S.C. §1692g.

Even if Portfolio did violate the collection laws complained of by Plaintiff, it is still not liable as a matter of law because such violations would constitute bona fide errors. Plaintiff's argument that Plaintiff is entitled to Summary Judgment on this defense because Portfolio is not entitled to assert it is ***completely unsupported by the law*** and based on misrepresentations or misunderstandings of the record evidence. (*See* Plaintiff's MSJ at 10-12.) As explained above, Portfolio does not have an obligation to conduct an independent investigation of its accounts, and was entitled to rely on World Financial's representations regarding the validity of Plaintiff's account. Bacelli, 729 F.Supp. 2d at 1334. Despite this well settled principle of law, Plaintiff amazingly argues that "[t]he Fair Debt Collection Practices Act does not allow a debt collector to purchase accounts and rely exclusively on the original account holder's representations." (Plaintiff's MSJ at 11.) This is simply not true and is contrary to established precedent. *See, e.g.,* id.

Because they are not supported by law, Plaintiff's arguments against Portfolio's bona fide error defense that are premised on a duty to investigate do not support summary judgment. For instance, Plaintiff argues that "there were no systems in place to independently verify the authenticity of debts purchased by [Portfolio]." (Plaintiff's MSJ at 11.) This claim does not help Plaintiff. Even if it were true, it would still not preclude Portfolio from a bona fide error defense in this case. Portfolio is entitled to a bona fide error defense under both the FDCPA and FCCPA if its alleged violations were (1) not intentional and (2) it has procedures reasonably adopted to avoid such violations. 15 U.S.C. §1692k(c); FLA. STAT. § 559.77(3). However, a successful bona fide error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." Bacelli, 729 F.Supp. 2d at 1333 (*citing* Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 539 (7th Cir. 2005)). Having systems in

place to independently verify account information is therefore not necessary to establish a bona fide error defense. Other systems that could prevent the error could meet the standard necessary for a bona fide error. It is these other procedures that Portfolio has in place to protect consumer's from the violations complained of in Plaintiff's Complaint.

Indeed, contrary to Plaintiff's assertions (*see* Plaintiff's MSJ at 11), Portfolio has a thorough process by which it learns of and accommodates disputed debts. (*See* DSOMF ¶¶ 33-40.) Prior to beginning collection activities on a new account, Portfolio sends a verification letter to the debtor in conformity with 15 U.S.C. §1692g. (DSOMF ¶ 33.) The letter informs debtors that their account has been assigned to Portfolio and that Portfolio will begin the collection process in 30-days unless the debtor disputes the debt in writing. (Id.) The letter states that Portfolio will provide the debtor with the name and mailing address of the original creditor upon request. (DSOMF ¶ 34.) If Portfolio receives back a written dispute, Portfolio's Collection's Department notes the debtor's account, notifies the Dispute Department, and immediately transfers the account to a "non-collectible" status. (DSOMF ¶ 35.) No collection efforts are undertaken, including phone calls, while the Dispute Department seeks to validate the claim, as it is Portfolio's policy to not collect on accounts that are in dispute. (DSOMF ¶ 37.)

Portfolio also has a policy for dealing with verbal disputes over the telephone. (DSOMF ¶ 38.)  Whenever a debtor disputes his debt over the telephone, Portfolio instructs him that his request must be in writing, instructs him on how to make such a dispute, and places a stop all calls on the debtor's account for fourteen (14) days so as to provide the debtor with plenty of time to follow through with the written dispute process. (DSOMF ¶ 39.)

Had Plaintiff sent Portfolio a written notice of dispute, Portfolio has procedures and systems in place that are designed to upload such documents upon receipt and there would be

records of them. (DSOMF ¶ 40.) Prior to this litigation, Portfolio had no such records. (*See* id.) To this end, Plaintiff completely misses the mark in his attempt to negate the legitimacy of Portfolio's account updating technology. (*See* Plaintiff's MSJ at 11.) Plaintiff apparently argues that Portfolio's systems "do not have any safeguards" because Portfolio's systems did not show that the Account was in dispute prior to this litigation. (Id.) However, Portfolio's technology only uploads information to the extent it is actually received. (*See* Nyetta Jackson Depo. p. 9, lines 6-25; p. 10, lines 1-25; p. 11, lines 1-23.)

Therefore, Portfolio's account did not indicate that the Account was in dispute simply because *this information was never provided to Portfolio*. Plaintiff himself acknowledges that World Financial did not inform Portfolio that the Account was in dispute as part of his statement of undisputed facts. (DSOMF ¶ 17.) After the Account was transferred to Portfolio, Plaintiff also admits that he did not respond to Portfolio's dispute verification letter. (DSOMF ¶ 27.) As a consequence, and based on the procedures detailed above, Portfolio's systems would have prevented contact with Plaintiff if Portfolio had been advised that the debt was disputed.  Said another way, if Portfolio had been advised that the debt was disputed and its systems did not prevent the violation of either the FDCPA or the FCCPA, then such a violation would have been unintentional and notwithstanding procedures to prevent the violation. This is the very definition of a bona fide error and Plaintiff cannot obtain summary judgment on this issue.

Plaintiff next attempts to avoid the bona fide error defense by arguing, without record evidence, that Portfolio's actions were intentional. (Plaintiff's MSJ at 12.) Besides Plaintiff's bald assertion, there is absolutely no evidence of intentional conduct on the part of Portfolio. Plaintiff does not even try to square his admissions that neither he nor World Financial advised Portfolio of the dispute with his bald claim that Portfolio acted intentionally.

Plaintiff also makes arguments regarding violations that allegedly occurred after the Complaint had been served upon Portfolio. These arguments cannot serve as a basis for liability against Portfolio. Plaintiff is not entitled to make new arguments on summary judgment that were not originally pled in his Complaint. Even if he could, Portfolio would still not be liable for such alleged violations as they would constitute bona fide errors as a matter of law.[6]

Finally, Plaintiff's Complaint alleges very broadly that Portfolio violated the FCCPA and the FDCPA. Plaintiff has not come forward with any evidence or arguments as to why Portfolio should be precluded from offering a bona fide error defense to every possible claim that Plaintiff could proceed with in this action. Instead, Plaintiff has focused on a very narrow issue relating to bona fide error and has attempted to obtain a blanket summary judgment on the issue in its entirety.

As a result of the foregoing, Plaintiff cannot prove that it is entitled to Summary Judgment on Portfolio's bona fide error defense.

## V. ALLEGED VIOLATIONS OCCURRING AFTER SERVICE OF COMPLAINT ARE NOT PROPERLY BEFORE THIS COURT AND CANNOT FORM A BASIS FOR SUMMARY JUDGMENT.

Contrary to Plaintiff's assertions, he is not entitled to judgment for any alleged violations occurring after May 1, 2012, the date Plaintiff's Complaint was filed. Any such alleged violations could not have been included in Plaintiff's Complaint at that time because they had not yet occurred. By operation of law Plaintiff is precluded from arguing for summary judgment on matters that are not pled in his Complaint. *See* Gilmour, 382 F.3d at 1314-15. Indeed, the Federal Rules of Civil Procedure do "not afford plaintiffs with an opportunity to raise new

---

[6] This issue is take-up in detail in Part V.

claims at the summary judgment stage." Id. at 1314. If Plaintiff wished to pursue alleged violations that occurred after the filing of the Complaint, then he should have sought leave to amend his Complaint as contemplated by the Rules of Civil Procedure. Id. In Gilmour, the Eleventh Circuit explained this principle:

> Efficiency and judicial economy require that the liberal pleading standards under…Rule 8(a) are inapplicable after discovery has commenced. At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a). A plaintiff may not amend her complaint through argument in a brief….

As a consequence, Plaintiff cannot receive summary judgment on any alleged collection violations occurring after May 1, 2012 because they are not part of this action.

In addition, even if Plaintiff could properly argue post-service violations without amending his Complaint, he would still not be entitled to summary judgment because such violations would constitute bona fide errors as a matter of law. These violations would clearly be unintentional and in the face of procedures reasonably adopted to avoid such violations. More importantly, counsel for Plaintiff's inaction directly contributed to the claimed violations.

As discussed above, it is Portfolio's policy to not contact debtors with disputed accounts, and it has procedures in place to ensure the same. (DSOMF ¶ 37, 46.) Upon receiving Plaintiff's Complaint, Portfolio attempted to follow these safeguards and place a hold on all collection activities related to Plaintiff's account. (DSOMF ¶ 46.)

However, an inquiry into Portfolio's records revealed that it had numerous accounts belonging to persons named "Marco Lopez." (DSOMF ¶ 47.) For this reason, Portfolio sent correspondence to Plaintiff's counsel, requesting additional information to assist it in identifying the account at issue. (DSOMF ¶ 48.) The information requested was not furnished in response to this request. (Id.) Portfolio sent a follow-up correspondence to Plaintiff's counsel on June 4,

2012, again requesting information to assist in identifying Plaintiff's account. (DSOMF ¶ 49.) When Portfolio finally did receive the requested information, it placed a hold on Plaintiff's account. (DSOMF ¶ 50.)

Plaintiff therefore cannot show that Portfolio intentionally violated the FDCPA or FCCPA after it was served with the Complaint. To the contrary, Portfolio made multiple good faith affirmative efforts to cease collections on the Account. (*See* DSOMF ¶¶ 46-49.) Any such violations would be the result of Plaintiff's counsel's failure to timely respond and protect her client's interests.

Consequently, Portfolio cannot be held liable for any violations that may have occurred between May 1, 2012 and June 6, 2012 (when it last attempted to contact Plaintiff). Such violations cannot be considered part of this action because they occurred after suit was filed and no amendment of the Complaint was ever made. But even if they were properly considered on summary judgment, Portfolio is still not liable as any violations would constitute bona fide errors.

Finally, finding Portfolio liable for any alleged post-service violations would also be perverse from a public policy perspective. Plaintiff's attorney allowed her client to be subjected to the allegedly improper behavior for which she is now seeking damages and presumably attorney's fees for litigating. Allowing her to collect her fees would create incentives that directly clash with the purpose of the FDCPA and FCCPA, which is to protect consumers. In any event, Plaintiff's counsel has unclean hands in this situation, and should not be allowed to profit therefrom.

**VI. CONCLUSION**.

Portfolio could not have violated either the FDCPA or the FCCPA. Plaintiff cannot show that the Account was a "consumer debt." Additionally, Plaintiff knew that the Account was not his own, and Portfolio lacked actual knowledge that the Account was in dispute.

Portfolio also had no duty to make an independent investigation of the information provided to it by co-defendant World Financial. To the contrary, Portfolio was entitled to rely on the information provided by World Financial, and Plaintiff cannot sustain a cause of action against Portfolio on the theory that they "should have known" the Account was not Plaintiff's.

Even if Portfolio did violate the collection laws complained of by Plaintiff, it is not liable as a matter of law because such violations constituted bona fide errors. They were not intentional and Portfolio has systems in place that are reasonably adopted to avoid such violations. Plaintiff's assertions to the contrary are based upon blatant mischaracterizations of the record evidence.

Plaintiff's claims for alleged violations occurring after service of the Complaint are improper. Such violations were not pled in his Complaint, and Plaintiff is not entitled to make new arguments on summary judgment that were not originally pled in his Complaint. But even if such violations were a proper consideration for purposes of Plaintiff's MSJ, Portfolio would still not be liable because they would constitute bona fide errors as a matter of law.

WHEREFORE Portfolio respectfully requests that this Court find for it and against Plaintiff, and deny Plaintiff's Motion for Partial Summary Judgment, and grant such other and further relief as the Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 7, 2012 this Notice was electronically filed with the Clerk of Court using the ECF electronic filing system which electronically notifies the following:

| Samira Ghazal, Esq. | Dale Golden, Esq. |
|---|---|
| 1909 SW 27th Avenue | Golden & Scaz, PLLC |
| Miami, FL 33145 | 201 North Armenia Avenue |
| samara@samiraghazal.com | Tampa, FL 33609 |
| | dale.golden@goldenscaz.com |

s/ Robert E. Sickles
Robert E. Sickles, P.A.
rsickles@hinshawlaw.com
Florida Bar No. 167444
**HINSHAW & CULBERTSON LLP**
100 South Ashley Drive, Suite 500
Tampa, FL 33602
Telephone:  813-276-1662
Facsimile: 813-276-1956
*Attorney for Defendant Portfolio Recovery Associates, LLC*

17